# CASES

## ARGUED AND DETERMINED

### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

---

### FOWLER v. PALMER et al.

#### (Circuit Court of Appeals, Fourth Circuit. February 7, 1908.)

#### No. 695.

EQUITY—PLEADING—MULTIFARIOUSNESS—CREDITORS' BILL.

A bill by a judgment creditor against the debtor and others to set aside various conveyances by which it is alleged the debtor fraudulently transferred his property to different corporations organized for the purpose and of which he owned the stock, the purpose being to cover it up and place it beyond the reach of execution through which transfers the other defendants have acquired or claim some interest in different portions of the property, has but a single object, which is to reach and subject the property, is based on a series of transactions forming one course of dealing, and is not demurrable for multifariousness, although the interests of the other parties defendant are separate and distinct.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, § 356.]

Appeal from the Circuit Court of the United States for the Western District of Virginia, at Abingdon.

Daniel Trigg, for appellant.

George E. Penn and J. T. Coleman (J. I. Hurt, James L. White, and R. M. Page, on the brief), for appellees.

Before PRITCHARD, Circuit Judge, and BRAWLEY and BOYD, District Judges.

BOYD, District Judge. On the 16th of December, 1905, A. P. Fowler, receiver of the American Exchange National Bank, of Syracuse, N. Y., filed in the Circuit Court of the United States for the Western District of Virginia, his bill in chancery, as follows:

"To the Honorable Judge of the Circuit Court of the United States for the Western District of Virginia:

"1. The bill of complaint of A. P. Fowler, receiver of the American Exchange National Bank of Syracuse, in the state of New York, who is a citizen of the state of New York, and who holds his position as receiver of the said bank by appointment of the Comptroller of the Currency, and as successor by substitution, as hereinafter stated, to the rights, duties, obligations, and responsibilities of J. W. Schofield, the former receiver of the said American Exchange National Bank of Syracuse, in the management and control of the uncollected assets of the said bank, all of which came into his hands upon his appointment

160 F.—1

as such receiver, complainant, against Charles F. Palmer in his own right; C. F. Palmer, administrator of the estate of George W. Palmer, deceased; the Palmer Land & Cattle Company, incorporated; the Palmer-Thomas Lumber Company, incorporated; the L. A. Palmer Company, incorporated; the Holston Mercantile Company, incorporated; the Holston Salt & Plaster Company, incorporated—which said named companies are corporations created by and existing under the laws of the state of Virginia, and doing business in the said state, and in the Western District of Virginia; and Charles F. Palmer and Leon A. Palmer, late partners under the firm name and style of L. A. Palmer & Co.; James W. Bell, trustee, under a deed of trust executed to him by the Palmer Land & Cattle Company; Mrs. Susan M. Palmer, the wife of Charles F. Palmer; Walter S. Preston, executor of A. C. Cummings, deceased; the Lynchburg National Bank; the Bank of Chilhowie, a corporation created and existing under the laws of the state of Virginia; the First National Bank of Lynchburg, Lynchburg, Va.; the Chatham National Bank of New York City; the Marion National Bank of Marion, Va.; the Bank of Marion, a corporation created by and existing under the laws of the state of Virginia; the American National Bank of Orange, Va.; the Citizens' Bank of Lebanon, Va., a corporation created by and existing under the laws of the state of Virginia; the Radford Trust Company, of Radford, Va., a corporation created by and existing under the laws of the state of Virginia; the Drovers' & Mechanics' National Bank of Baltimore, Md.; the American Bank of Orange, Va., a corporation created by and existing under the laws of the state of Virginia; the Saltville Bank of Saltville, Va., a corporation created by and existing under the laws of the state of Virginia; the Bank of Wytheville, Wytheville, Va., a corporation created by and existing under the laws of the state of Virginia; the Bank of Glade Spring, of Glade Spring, Va., a corporation created by and existing under the laws of the state of Virginia; the People's National Bank of Lynchburg, Va.; the First National Bank of Abingdon, Va.; V. H. Thomas and W. F. Smyth and H. L. Morgan, S. F. Akers, trustee, in a deed of trust executed to him as trustee by the Holston Mercantile Company; Lynchburg Grocery Company, a corporation under the laws of the state of Virginia; S. Frank & Sons; the Cox Hat Company; the Chilhowie Milling Company; the Mathieson Alkali Works —the last three named being corporations under the laws of the state of Virginia; F. A. Davis & Sons; the George DeWitt Shoe Company; the Baker Grocery Company—corporations created by and existing under the laws of the state of Virginia; Harris, Woodson & Co.; C. M. McClung & Company; Huntsman Brothers & Co.; Pulaski Grocery Company; Cowan, McClung & Co.; Robert Harris & Bros.; the Abingdon Grocery Company; Frank Shantz; the Seinshiner Paper Company; Carlin & Fulton; E. W. King & Co.; E. C. De Witt & Co.; the Art Bedstead Company; George B. Thomas, Jr.; John E. Hurst & Co.; Lockett, Reeves & Co.; D. M. Ferry & Co.; the W. H. Miles Shoe Company; Wyndham B. Robertson and George E. Worden, directors in the Holston Mercantile Company, defendants.

"Complainant alleges that the said American Exchange National Bank of Syracuse was organized on the 12th day of April, 1900, with a capital stock of $200,000, and from the 12th day of April, 1900, continued to do business as a national banking corporation, with its principal office and place of business in the city of Syracuse, Onondago county, N. Y., down to and including the 10th day of February, 1904. On February 10, 1904, and at the close of business hours, the said bank being insolvent, closed its doors and suspended business.

"On the 11th day of February, 1904, the Comptroller of the Currency of the United States, William B. Ridgely, having become satisfied of the insolvency of said bank, appointed Josiah Van Vranken, Esq., as receiver of the same, under and in accordance with the statutes and laws of the United States, his commission bearing date the 11th day of February, 1904; that on said date said Van Vranken having duly qualified as such receiver, entered upon his duties as such, took possession of the books, records, and assets of the said bank, and continued to act as such receiver until the 11th day of April, 1904, he having resigned as such receiver and his resignation having been accepted, to take effect on such date. On the 6th day of April, 1904, the Comptroller

of the Currency, in accordance with the statutes and laws aforesaid, issued a commission to John W. Schofield, thereby appointing him receiver of said bank, his appointment to take effect on the 11th day of April, 1904; that on said date the said Schofield duly qualified, entered upon his duties, and took possession of the books, records, and assets of said bank, and continued to act as receiver until the 31st day of March, 1905, he having resigned as such receiver, and his resignation having been accepted by the Comptroller of the Currency to take effect on said date. By commission issued by the Comptroller of the Currency under the statutes and laws above mentioned, bearing date the 22d day of March, 1905, your complainant was appointed receiver of said bank, such appointment to take effect, by the terms of such commission, on the 31st day of March, 1905. On said date complainant duly qualified and entered upon his duties and took possession of the books, records, and assets of said bank, and ever since has been and now is acting as such receiver.

"2. Your complainant alleges that his predecessor, J. W. Schofield, as such receiver of the American Exchange National Bank of Syracuse, N. Y., recovered in the Circuit Court of the United States for the Western District of Virginia, at Abingdon, Va., the following named judgments. Some of said judgments were obtained at the October term of said court, 1904, and others of them at the May term, 1905:

"No. 565. Against Charles F. Palmer, administrator of the estate of George W. Palmer, deceased, for $9.250, with interest at 5% from January 18, 1904, till paid, and costs amounting to $18.65. Date of judgment, December 22, 1904, docketed in Washington county, Va., January 10, 1905.

"No. 566. Against Charles F. Palmer, for $4,500, with interest at 6% from May 9, 1904, till paid, and costs amounting to $29.25. Date of judgment, December 22, 1904, docketed January 10, 1905, in Washington county, Va.

"No. 567. Against Charles F. Palmer in his own right and Charles F. Palmer, administrator of the estate of Geo. W. Palmer, deceased, for $19,500, with interest at 6% on $4,000 from May 30, 1904; on $2,500 from March 8, 1904; on $2,500 from March 23, 1904; on $5,000 from March 30, 1904; on $1,500 from May 4, 1904; on $4,000 from March 30, 1904; until paid, and costs, $24.35. Date of judgment, December 22, 1904. Docketed in Washington county, Va., January 10, 1905.

"No. 568. Against the Holston Salt & Plaster Company and Charles F. Palmer, administrator of Geo. W. Palmer, deceased, and Charles F. Palmer, in his own right for $9,250, with interest at 5% from November 18, 1903, till paid, and costs, $22.20.

"No. 569. Against the Holston Salt & Plaster Company and C. F. Palmer for $4.750, with interest from May 31, 1904, and costs, $14.75. Obtained May 5, 1905.

"No. 570. Against Charles F. Palmer, administrator of the estate of Geo. W. Palmer, deceased, and Charles F. Palmer in his own right, for $9,250, with interest at 5% from March 21, 1904, until paid, and $22.75 costs. Date of judgment, December 22, 1904. Docketed January 10, 1905, in Washington county, Va.

"No. 571. Against L. A. Palmer and Charles F. Palmer composing the firm of L. A. Palmer & Co., for $9,250, with interest at 5% from January 18, 1904, until paid, and $20.80 costs. Date of judgment, December 22, 1904. Docketed in Washington county, Va., January 10, 1905.

"No. 572. C. F. Palmer, and C. F. Palmer, administrator of Geo. W. Palmer, deceased, for $11,500, with interest from March 1, 1903, and costs, $24. Judgment obtained May 5, 1905.

"No. 573. Against W. F. Smyth and Charles F. Palmer for the sum of $675, with interest thereon at 6% from April 28, 1904, until paid, and $20.35 costs. Date of judgment, December 22, 1904. Docketed January 10, 1905.

"No. 574. Against the Holston Mercantile Company and Charles F. Palmer for $1,145, with interest at 6% from May 9, 1904, until paid, and $20.35 costs.

"No. 575. Against L. A. Palmer and Charles F. Palmer, partners under the firm name and style of 'L. A. Palmer & Co.,' and Charles F. Palmer for $500, with interest at 6% from June 1, 1904, till paid, and $17.75 costs. Obtained May 5, 1905.

"And at the May term, 1905, he recovered the following judgments:

"No. 566. Against H. M. Wiley and Charles F. Palmer for $2,800, with interest at 6% from May 28, 1904, till paid, and $14.75 costs. Judgment dated May 5, 1905.

"No. 571. Against Charles F. Palmer, administrator of Geo. W. Palmer, deceased, for $9.250, with interest from January 18, 1904, till paid, and costs $17.75. Judgment obtained May 5, 1905.

"No. 565. Against Charles F. Palmer for $9,250, with interest from January 18, 1904, and $17.75 costs.

"All of the said judgments are due and unpaid, except the said judgment No. 574 against the Holston Mercantile Company—judgment May 5, 1905. Executions have issued from time to time upon the said named judgments, and are now alive in the hands of the marshal of the Western District of Virginia, but he refuses to levy the same upon the property held by the hereinafter named incorporated companies or either of them without a bond of indemnity, under the statutes of Virginia, which said bond complainant and his predecessor as receiver are unable to give or secure, the said American Exchange National Bank of Syracuse, N. Y., having been declared insolvent under the national banking laws. Copies of said judgments are filed as part of this bill marked 'J. W. S.'

"3. Complainant alleges that the said judgments Nos. 571 and 575, respectively, are based and were obtained upon two negotiable notes due respectively the 18th day of January, 1904, and the 1st day of June, 1904, which were executed by the said firm of L. A. Palmer & Co. as makers, and indorsed by the said Charles F. Palmer and George W. Palmer; that before the maturity of the said notes the said firm of L. A. Palmer & Co., or the individual partners thereof, or Charles F. Palmer, procured a charter of incorporation under the laws of the state of Virginia, under the name of the L. A. Palmer Company. The said firm of L. A. Palmer & Co. was a mercantile and manufacturing concern, engaged at Abingdon, Va., in the manufacture and sale of clothing, pants, overalls, and such commodities; employing for that purpose a number of hands, and being possessed of machinery and stock of considerable value, to the amount perhaps of $15,000. No evidence of the sale or transfer of any property or assets from the firm of L. A. Palmer & Co. to the said corporation appears of record; yet the business is carried on in the same way to the same end, at the same place without any apparent change of the methods pursued by the partnership. It is conducted by the said Leon A. Palmer, who was a nominal partner in L. A. Palmer & Co., and a director and incorporator in the L. A. Palmer Company. The said Charles F. Palmer was the sole owner of the firm of L. A. Palmer & Co., and he is the owner of the entire capital stock of the L. A. Palmer Company. The other directors in the concern are mere figureheads and dummies. They are L. A. Palmer and W. F. Smyth, to whom one or more shares of stock were issued to nominally qualify them for directors, and for which neither of them paid anything; and they and their names have been used in the furtherance of an end of deception and fraud upon and against the creditors of L. A. Palmer and of Charles F. Palmer, and of L. A. Palmer & Co. The said L. A. Palmer Company was capitalized at $10,000, and your complainant believes that the assets of the firm of L. A. Palmer & Co., were worth fully that sum or more.

"4. Your complainant alleges that the said Holston Mercantile Company is a corporation created by the laws of the state of Virginia, and that the entire ownership was in the said Charles F. Palmer. The said company was incorporated on the ―――― day of March, 1899. Its incorporators were the said Charles F. Palmer, president; W. F. Smyth, secretary; George W. Palmer, treasurer and director; and W. B. Robertson, a director; and George E. Worden, a director. The officers of the said company last appointed were Charles F. Palmer, president; George M. Akers, secretary; and W. B. Robertson and George E. Worden, directors. The said company was capitalized at $10,000, of which $8,000 of the stock was issued.

"Your complainant charges that the assets of the said corporation are in law and equity liable to the liens of his judgments and executions hereinbefore mentioned, the same being the property of the said Charles F. Palmer, though nominally held by the said corporation, up to the 18th day of Septem-

ber, 1903. when the said Holston Mercantile Company, by deed of that date, executed to S. F. Akers, as trustee, its entire assets, consisting of its entire personal and mixed property, including its stocks of merchandise in the store-house occupied by it at Buena Vista, in Washington county, Va., and in the Western District of Virginia, together with its good will, bills receivable, and open accounts, in trust to secure certain creditors of the said firm, all of whom will be hereinafter named as defendants, and process against them pray-ed for if necessary, it not being deemed essential to do so at this time, viz.: The People's National Bank of Lynchburg, Va., the Bank of Wytheville, the Bank of Glade Spring, the Bank of Marion, the Chatham National Bank of New York, the Lynchburg Grocery Company, S. Frank & Sons, the Cox Hat Company, the Chilhowie Milling Company, the Mathieson Alkali Works, F. A. Davis & Sons, George DeWitt Shoe Company, Becker Grocery Company, Harris, Woodson & Co., C. M. McClung & Co., Huntsman Bros. & Co., Pulaski Gro-cery Company, Cowan, McClung & Co.. Robert Harris & Bros., the Abingdon Grocery Company, Frank Shantz, the Seinshiner Paper Company, Carlin & Ful-ton, E. W. King & Co., E. C. DeWitt & Co., the Art Bedstead Co., George B. Thomas, Jr., John E. Hurst & Co., Lockett, Reeves & Co., D. M. Ferry & Co., the W. H. Miles Shoe Company, and providing that the said Akers as trustee should immediately take possession and control of all the property, personal and mixed, of the said corporation, and proceed to make sale of the same, either privately or by public auction, as a whole or in parcels or parts, as he may deem best for the creditors, and authorizing him, at his discretion. to run and operate the merchandise business of the said company for the period of one year from the date of said deed, and in doing so, authorizing him out of the proceeds of sales by him, to purchase from time to time, for cash, such additional stock of merchandise as will aid in keeping up the business and dis-posing of the other stock to a better and more profitable advantage; but pro-viding that any number of creditors secured by the said deed whose claims aggregate $5,000 might require the said trustee at any time to sell the said stock at public auction, to the highest bidder, at private sale, after giving rea-sonable notice of the time and place of sale, and further providing that at the end of said twelve months, if the said stock is not in the meantime disposed of, the said trustee shall at once proceed to sell the same at public auction, to the highest bidder, after giving a reasonable notice of time and place; that the said trustee shall at once collect all the bills receivable, open accounts or other indebtedness due the said corporation.

"The said trustee is required to keep accurate accounts, and at the end of every three months render to every creditor an accurate statement of his transactions, and append to such statement an account, showing the amount of money on hand, the share to which each creditor secured by this deed is entitled, which he is required to pay over within ten days to such creditors. In case of sale at public auction, upon the demand of creditors or at the end of twelve months, as above provided for, the fund arising from the said sale, after paying expenses, etc., attending the execution of the trust shall be ap-plied to the debts thereby secured.

"The trustee is allowed $75 per month as a compensation for his services, to be retained monthly out of the proceeds of sale. If a public sale is had within three months after the date of the deed, the trustee is to have a com-mission of one and a half per cent. on the proceeds of sale in addition to his monthly salary. He is empowered to employ an assistant in running the said business and in disposing of the said stock, at a salary not exceeding $30 per month, to be paid in the same manner as his own compensation. He is au-thorized to employ an attorney for advice in the management of his trust, and to pay him a reasonable sum for his services. After payment of the debts so secured, the trustee is required to return to the corporation or its assigns any goods remaining on hand, together with all bills receivable and open ac-counts uncollected, and to pay over to the said company or its assigns any money in his hands arising under the said deed; and there are certain other provisions as to the powers of the trustee for the accommodation of the house in which the business of the said company has been heretofore conducted, or for the rental of another house under the conditions named in the said deed.

"Your complainant insists and alleges that the property named in this deed of trust is subject to the lien of his judgments and executions hereinbefore set forth in this bill; that it is in reality the property of Charles F. Palmer, who is the owner of the Holston Mercantile Company, and that the transfer of the same and that the attempted appropriation of it to certain creditors is a fraud committed under the cover of the corporate name of the Holston Mercantile Company for the purpose of shielding it from the operation of complainant's judgments and executions named; that, moreover, it purporting to be a general assignment of the property and assets of a mercantile concern, it is contrary to the provisions of Code Va. § 2460a, to prevent merchants engaged in buying and selling merchandise, while indebted, from selling their entire stock of merchandise in public, or selling the major portion thereof, otherwise than in the ordinary course of trade, the section of the Code to which it is so repugnant being 2460a, which provides that it shall be unlawful for any merchant engaged in buying and selling of merchandise, while he is indebted to any person, to sell his entire stock of merchandise in public, or to sell the major portion thereof, otherwise than in the course of trade in the regular and usual prosecution of the seller's business, and with the intent of ceasing to conduct said business, in the same manner and at the same place as he has heretofore conducted the same, without first making a full and complete inventory of the merchandise so proposed to be sold, in which inventory the values shall be extended at the ruling wholesale price thereof; and without making a full, true, and accurate schedule of all persons to whom he is indebted, stating therein the post office address of each of said creditors, and the amount owing to each of them; to which inventory and schedule to the proposed purchaser, and shall retain exact copies same is true and accurate; or, if the seller shall assert that he is not indebted to any person, requiring that he shall make an affidavit to that effect, and deliver the same to the purchaser with the inventory provided for in the said section, and which further provides that the seller shall deliver said inventory and schedule to the proposed purchaser, and shall retain exact copies thereof in his own possession, and that the purchaser and seller shall each preserve such inventory, schedule, and affidavit for the period of six months after the sale and purchase, and that the same shall be open to the inspection of the creditors of the seller, and further providing that 10 days before such sale shall be consummated, and before the purchaser takes possession of the merchandise so proposed to be sold, the seller and proposed purchaser shall join in giving written or printed notice of the proposed sale and purchase of such merchandise to each of the creditors named in said schedule, and further providing that if the seller fail to make such inventory of such merchandise, or if such inventory shall fail to state the true value of the said goods as required, or if the seller fail to make such schedule of creditors and the purchaser shall have knowledge of the fact, and if the purchaser shall fail to require the affidavit above provided, or if the purchaser fail to give the creditors named in said schedule notice as above stated, in the manner provided, or if such creditors shall not correctly state the amount of such merchandise proposed to be sold and the consideration to be paid therefor, and the time and manner of making the same, then in either of such events said sale shall be prima facie presumed to be fraudulent and void as against the creditors of such seller, and the merchandise in the hands of the purchaser, or any part thereof, if it be found in his hands, shall be liable to such creditors. The purchaser in this case is S. F. Akers, the trustee. Your complainant alleges that there was no attempt whatsoever to comply with the terms of the law in this behalf, and that the said trustee in the said deed of trust knew that there was no compliance or attempted compliance with the same.

"Your orator alleges that said Akers was one of the employés of the said Holston Mercantile Company and was conversant with its affairs, and that he knew, or had the full means of knowledge, that the said corporation was owned in full and controlled by Charles F. Palmer, and that he had actual knowledge of the fact that the purpose of the said deed of trust was to commit a fraud upon the other creditors of the said Charles F. Palmer, and among them your complainant, in order to defeat, hinder, and delay your complainant in the collection of his judgments hereinbefore set forth. It is submitted that,

in view of the facts stated, that said deed of trust is fraudulent and void, and that the same is in any event subordinate to the lien of your complainant's judgments and executions hereinbefore set forth. A copy of the said deed of trust, with the schedule of creditors, is filed as part of this bill marked 'S. F. A.,' and prayed to be considered as part of this bill.

"5. Your complainant alleges that the entire scheme of incorporating the L. A. Palmer Company was conceived and consummated in fraud and with the intent to hinder, delay, defraud, and defeat the creditors of L. A. Palmer & Co. and Charles F. Palmer in the collection of debts against them and against the said estate of George W. Palmer. This would appear from the fact that the debts upon which the said first-named judgment, viz., No. 571, was obtained, became due on the 18th day of January, 1904, and the charter of incorporation was granted on the 23d day of February, 1904. At the date of granting said charter the said Charles F. Palmer was the sole owner of the said partnership, and of the assets held by it, and was apparently possessed of considerable property, real and personal, and was reputed to be a man of considerable wealth. He was, in fact, indebted beyond the conception of any of his creditors, and was, in fact, insolvent. He continued, however, to lull the said bank and its officers and the said J. W. Schofield, former receiver, and the plaintiff into a sense of security, by repeated and reiterated assurances and promises of payment of this and a number of other debts, upon which he was liable in one or another capacity, as principal or indorser, in the said bank in a sum in the aggregate of more than $80,000, upon all of which your complainant has obtained judgment, and executions thereon have been returned nulla bona. Copies of the said judgments are herewith filed as part of this bill marked respectively Exhibits Nos. 565, 566, 567, 568, 569, 570, 571, 572, 573, 574, 575. The said Holston Salt & Plaster Company, at the time its paper was negotiated and when the judgment was obtained thereon, was a defunct corporation and insolvent—any assets it may be possessed of are subject to the lien of complainant's said judgments and executions.

"6. None, nor any part, of the said judgments have been paid except that numbered 574, against the Holston Mercantile Company, which was paid upon execution on said judgment. The reason of this was that the said Charles F. Palmer had failed to consummate his scheme of fraud, as to that concern, doubtless by inadvertence: a part of which was to obtain charters and convey his entire properties to different corporations so as to defeat the liens of judgments and executions thereon as the same might be obtained, upon his paper which was running to maturity in the said American Exchange National Bank of Syracuse, N. Y., as appears from the said judgments. Accordingly, and to that end, he obtained a charter and had incorporated under the laws of Virginia, the Palmer Land & Cattle Company. The date of this charter was March 1, 1904. The authorized capital of this company was $25,000, all of which was issued.

"7. By deed made the 1st day of March, 1904, Charles F. Palmer and Sue M., his wife, of the first part, conveyed to the Palmer Land & Cattle Company, incorporated, of the second part, in consideration of 248 shares of the stock of the Palmer Land & Cattle Company, incorporated, of the par value of $24,-800, and in further consideration of $65,000 of the first mortgage 6 per cent. interest bearing coupon bonds of said company of date March 1st, 1904, maturing on the 1st day of March, 1934, to be secured by deed of trust upon real estate in said deed set forth, with covenants of general warranty, in the counties of Smyth and Washington, Va., viz.:

"No. 1. That tract or certain parcel of land lying and being in the county of Washington, state of Virginia, near Abingdon, containing 9 acres more or less, being the same property conveyed to Charles F. Palmer by F. S. Findlay and wife, by deed of date March 20. 1890.

"No. 2. Those three tracts of land known as the Scott, the Pile, and the Sturgeon lands, lying and being in the county of Washington, state of Virginia, and in the Saltville neighborhood, containing 33 acres, 152 acres, and 7 acres and 55 rods, being the same lands conveyed by George W. Palmer to Harriet A. Palmer by deed of date March 5, 1894, which the said C. F. Palmer derived by inheritance from his mother, Harriet A. Palmer.

"No. 3. That tract or parcel of land lying in Washington county, Va., on

both sides of Fowler's Miller creek, containing 300 acres, being the same land conveyed by Thomas E. Gardner and wife to Harriet A. Palmer by deed of date November 15, 1894, and which the said C. F. Palmer derived by inheritance from his mother, Harriet A. Palmer.

"No. 4. That tract of land lying in Washington county, Va., on the south slope of Lee's Knob, near Saltville, Va., containing 49 acres more or less, being the land conveyed by Ben K. Buchanan and wife to Harriet A. Palmer, by deed of date December 18, 1895, and derived by the said C. F. Palmer by descent from Harriet A. Palmer, his mother.

"No. 5. That tract of land containing 9 acres lying on the south side of Walker's Mountain in Washington county, Va., and being the same land conveyed to C. F. Palmer by Joseph M. Thomas and wife, by deed dated September 11, 1900.

"No. 6. That tract of land lying in Washington county, Va., containing 5 acres and 74 rods adjoining the land of Thomas P. Buchanan and others, and being the same land conveyed to C. F. Palmer by E. E. Gardner, by deed of date November 1, 1900.

"No. 7. That tract of land lying in Washington county containing 5 acres, being the same land conveyed by James H. Moore to C. F. Palmer, by deed of date December 16, 1901.

"No. 8. That tract of land in the counties of Smyth and Washington formerly owned by V. H. and S. M. Thomas, containing 1,059 acres, on the waters of North Fork of Holston River in Rich Valley, which was conveyed to the said C. F. Palmer by B. F. Buchanan, commissioner, by deed of date March 5, 1902.

"No. 9. That tract of land lying on the north side of Walker's Mountain in Washington county, Va., containing 361 acres, and being the same land conveyed to C. F. Palmer by William P. Douglas and others, by deed of date November 24, 1902.

"And the first parties for the consideration aforesaid did sell, transfer, and convey to the second party all the cattle, horses, mules, hogs, sheep, upon the lands aforesaid belonging to the said C. F. Palmer together with all the grain and provender, or any farming instruments, tools, and machinery and all implements pertaining to any of the said lands. The said deed was made on the 1st day of March, 1904, and admitted to record on the 7th day of March, 1904. And on the 1st day of March, 1904, the day of the date of the foregoing deed, the Palmer Land & Cattle Company, incorporated, executed a deed to James W. Bell, trustee, reciting that whereas C. F. Palmer and wife, by deed of an even date therewith, had conveyed to the Palmer Company various tracts of land situate in the counties of Washington and Smyth, state of Virginia, with the appurtenances thereto belonging, together with all the cattle, horses, mules, hogs, sheep, grain, provender, farming implements, tools, and machinery on the said lands, belonging to C. F. Palmer; and whereas the said Palmer Company as part consideration of said conveyance had agreed to execute and deliver to the said C. F. Palmer its coupon bonds to the number of 65, of $1,000 each, payable to bearer on the 1st day of March, 1934, with interest at the rate of 6% per annum, payable semiannually, on the 1st days of March and September, which bonds were to be secured by deed of trust upon the property, rights, and franchises of the Palmer Company; and whereas, by unanimous resolution of the stockholders of the said Palmer Company, as also by unanimous resolution of the board of directors in other meetings duly and legally assembled on the 20th day of February, 1904, at which said meetings all of which said stockholders and directors were present in person, and said bonds were authorized and directed to be issued and delivered to the said C. F. Palmer for the consideration aforesaid; and whereas, by resolutions as aforesaid of the stockholders and board of directors of the said Palmer Company, this deed of trust was approved by the same and ordered to be executed and delivered for equal security of said bonds without priority or preference of one over another, that for and in consideration of the premises and the sum of $1 in hand paid by the trustee, the receipt of which was acknowledged, and for the purpose of securing equally the said bonds as aforesaid that day executed and delivered to the said C. F. Palmer—the said Palmer Land & Cattle Company, party of the first part, did grant, bargain, sell, assign,

transfer, convey, and confirm, with covenants of general warranty unto the said James W. Bell, of the second part, all and singular its franchises, and all and singular those certain tracts of land aggregating about 2,000 acres, in the counties of Smyth and Washington, Va., conveyed by the Palmer Land & Cattle Company by deed as aforesaid, in trust nevertheless, 'for the equal and proportional benefit and security of all and every, the present and future holders of any and every bond issued thereunder, without preference and priority or distinction as to lien or otherwise, of any one bond over another bond, and providing and covenanting that if the Palmer Company should duly pay the said bonds and interest thereby secured according to the tenor and effect thereof, as recited, and should duly keep and perform all and singular the covenants and agreements contained, then, and in that event, the said deed of trust should terminate and thereafter be void; otherwise, to continue and remain in full force and effect.

"It was further expressly agreed that until default should be made by the said Palmer Company in the payment of the principal and interest of the said bonds, or any of them, and that until default should be made in respect of some act or covenant, obligation, or agreements therein required to be done, performed, or kept by the said Palmer Company, the said Palmer Company should be suffered and permitted to retain actual possession of all and singular the premises thereby conveyed, and by managers to use and operate the same, with the rights and franchises pertaining thereto, and to collect, receive, take, use, and enjoy the earnings, income, rents, issues, and other proceeds thereof. And the said Palmer Company did further covenant and agree, that it would well and truly pay unto the lawful owners or holders thereof for the time being the said 65 bonds, and which of them when and as they should become due and payable, according to their tenor and effect or when declared due and payable as provided by said deed; and likewise would well and truly pay all interest which should from time to time become due and payable upon said bonds, when and as the same should become due and payable, and that it would likewise promptly pay off all taxes, assessments, fees, license charges, which had accrued upon or might be levied or imposed upon the properties so conveyed, or upon the said Palmer Land & Cattle Company as a corporation; and the Palmer Land & Cattle Company did further covenant and agree that it would keep all the buildings and structures erected or which hereafter might be erected upon the lands so conveyed, sufficiently insured against loss and damage by fire, and would assign the policies taken out from time to time to the said James W. Bell, trustee, as further security under said deed; that in case of loss by fire the said Bell, trustee, should permit the said Palmer Company to apply all moneys received from insurance policies to rebuilding and restoring or repairing the property destroyed or damaged; and the certificate of the president and treasurer of the said company as to moneys needed for such application should be sufficient warrant to the trustee for paying over said moneys and the property so secured, restored, and rebuilt may be and become without any other conveyance to the operation and lien of this indenture. It was further covenanted and agreed that if the Palmer Company should fail or refuse to effect insurance as provided, or should fail to pay taxes, assessments, fees, or license charges levied or imposed upon it for the purpose conveyed, the trustee, upon demand of any bondholders, and upon being provided with sufficient funds for the purpose, might effect such insurance, pay such taxes, fees, and license charges, and the premiums of such amounts so paid by the lawful interest thereon should be a lien upon the franchises and premises thereby conveyed and be included as a part of the amount of the obligations secured by said deed, payable on demand with interest.

"And it was further covenanted and agreed that if default should be made in the time and the punctual payment of the interest upon said bonds or any of them to another part of such interest when such interest should become due and payable, or in case default should be made in any wise in respect to the payment and discharge of the taxes, assessments, fees, and insurance premiums mentioned, or in any part thereof, and said default should continue for six months, then and in either event at the option of the holders of a majority in interest of the then outstanding bonds served, expressed in writ-

ing to the said trustee, the whole of the principal of said bonds should become and be made due and payable with like effect, as if the said bonds had regularly matured according to their tenor and effect. In case the holders of a majority in interest of the said bonds then outstanding should, as provided for, declare the principal of all the bonds thereby secured to be due and payable, or in case default should be made in the payment of said bonds or any of them or any part of them for the sum become due, according to the tenor and effect thereof, then, and in either event, it was further covenanted and agreed that, as soon as such default, and any holder of any of said bonds should in writing request or desire, or his heirs or assigns should think fit, the said trustee should proceed at such time and place as he or they should think best to sell the property, rights, and franchises thereby conveyed, or so much thereof as might be necessary to sell, at public auction to the highest bidder; having first given notice for four weeks of the time, terms, and place of sale, in one or more newspapers published in the counties of Smyth and Washington, Va., and should apply the proceeds of sale to first paying taxes, and other like charges yearly due and unpaid, including any sums which might have been paid by any bondholder on account of any past due taxes, assessments, fees, license charges, compensation to amounts to the equal pro rata payments of the said bonds then outstanding, without priority or preference of one bondholder over another, and the price, if any, should be paid to the said Palmer Company. The said deed of trust was duly acknowledged on the 5th day of March, 1904, by the said Palmer Land & Cattle Company, incorporated, by Charles F. Palmer, president, and attested by W. F. Smyth, secretary. And the same was acknowledged on the 7th day of March, 1904, by the said trustee, and admitted to record on the 7th day of March, 1904. Copies of said deed, and deed of trust, are filed as part of this bill marked 'C. F. P. 1,' and 'C. F. P. 2,' respectively.

"8. Complainant alleges that Charles F. Palmer was, moreover, at this time engaged in an extensive lumber business, which was being conducted by one V. H. Thomas, under the firm name and style of Palmer, Thomas & Co,; and in this business he owned and was operating valuable machinery, stock, sawmills, and tramways in the counties of Smyth, Wythe, and Bland, in the state of Virginia, and in the Western District of Virginia. To the same fraudulent end he procured another charter of incorporation under the name of the Palmer-Thomas Lumber Company; the incorporators of which were Charles F. Palmer, president and treasurer, W. F. Smyth, secretary, and V. H. Thomas, director—likewise chosen as figureheads and dummies without any financial interest in the said company, except perhaps that the said Thomas was to receive a portion of the profit. The company was capitalized at $50,000, all of which has been issued. The date of this charter was the 1st day of March, 1904, and on the same day a deed was made conveying all the partnership effects to said corporation; and the said Palmer owns the entire capital stock thereof. The property so conveyed is shown by the deed hereinafter filed, marked 'V. H. T.'

"9. Your complainant alleges that, since these nominal incorporations thus variously made, the said Charles F. Palmer has continued his management and control of the property conveyed and transferred to them, without accounting to anybody, and your orator as one of his creditors would seem to have been effectually bound and gagged, as by a highwayman, and left on the roadside without legal redress; whilst his despoiler is left to enjoy the fruits of his enterprise. By this species of legerdemain he has sought to cover up and shield his property from his creditors. A copy of the deed of conveyance to the said Palmer-Thomas Lumber Company is filed as part of this bill, marked 'V. H. T.'

"10. The intention was by this first-named deed, on the part of Charles F. Palmer, to convey all his real estate to the said corporation, the Palmer Land & Cattle Company, retaining the management and control thereof, subject to the obligations of the deeds for 30 years, and retaining in his own hands a vast amount of personalty under his control, and subject to his own disposition, so as to delay, defeat, and defraud such of his creditors as might be selected by him as victims.

"11. A large amount of the stock and bonds secured by the said deed of trust named in clause 7 have been transferred by the said Charles F. Palmer as collateral security for past due debts to certain of his creditors, individuals and banks, state and national, the exact amount transferred or the proportion of which to each, complainant is unable to designate. The holders of these securities, the amount and value of which can only be ascertained by an account, are, as far as complainant can ascertain approximately, as follows, viz.: The Lynchburg National Bank, the Bank of Chilhowie, the estate of A. C. Cummings, of which Walter S. Preston is executor, the First National Bank of Lynchburg, Va., the Chatham National Bank of the city of New York, the National Bank of Virginia, the Marion National Bank, the Bank of Marion, the American National Bank, the Citizens' Bank of Lebanon, Va., the Radford Trust Company, the Drovers' & Mechanics' National Bank of Baltimore, Md., the American Bank of Orange. the Saltville Bank of Saltville, Va., the Bank of Wytheville, Va., the Bank of Glade Springs, Va., the People's National Bank, Lynchburg, Va.

"12. Your complainant is informed and believes that the said named Charles F. Palmer, before and after effecting the incorporation of the said named Palmer Land & Cattle Company, conveyed, transferred, and assigned to his wife, Mrs. Susan M. Palmer, valuable real and personal property and money, which legally and equitably belongs to his creditors, and is justly applicable to the debts of your orator hereinbefore enumerated. And he alleges that the said Mrs. Sue M. Palmer, or he on her behalf, has invested the proceeds of the said bonds and other property and money so given, assigned, and transferred to her in a tract of land near Abingdon, Va., for which she paid $7,000 in cash, which was conveyed to her by James W. Bell and wife, consisting of 70 acres, as shown by the deed executed to her herewith filed as part of this bill, marked 'J. W. B.' Simultaneously with the execution of the said deed on the 29th day of September, 1904, the said Palmer and wife executed a deed of trust on the said land so conveyed to her to H. W. Straley, Jr., and J. I. Hurt, trustees, to secure a debt of $4,000, loaned to her, and due two years after date according to the terms of the said deed of trust. Upon the said land are a number of valuable dwelling houses, the rent of which is considerable, which she is collecting and appropriating. The said Mrs. Palmer, or he for her, has erected a dwelling house, which is as yet unfinished, of great value, and which must have cost as much as $8,000 to $10,000 in its erection and appointments.

"13. Your complainant charges that Mrs. Palmer had not means of her own outside of what has been given her by her husband with which to make such a purchase or to erect such a house, or to acquire such property. Your complainant charges that this gift, transfer, and assignment to Mrs. Sue M. Palmer was made by Charles F. Palmer with the view, purpose, and intent to defeat and defraud his creditors, and that the said Mrs. Sue M. Palmer had notice thereof, and that, moreover, any such gift, transfer, or assignment to her was voluntary and made with the intent to hinder and delay his creditors in the collection of their just claims, of which she had notice, and that such gift, transfer, assignment, and conveyance to the said Mrs. Palmer was not made upon a consideration deemed valuable in law, and that the same is void as to complainant as creditors of the said Charles F. Palmer.

"14. Your complainant alleges that the said Charles F. Palmer, with intent to hinder, delay, and defeat the claims herein asserted by complainant, having transferred and assigned to various banks and creditors of his, by way of collateral security, various amounts of the stock and bonds of the said incorporated companies as stated, that in some instances the amounts so held as collateral are largely in excess of the demands of the said persons and banks against him, and that upon a fair accounting, even if the holdings of the said creditors should be shown to be valid and unimpeachable and superior to the claims of the complainant as above set forth, that there would be a surplus in the hands of such holders, which would be liable to the claims of your complainant. And in this connection complainant charges that the amount and value of the property, securities, and money given and transferred to the said Susan M. Palmer, even if given or transferred to her by way of compensation for her release or relinquishment of her contingent dower in the

real estate of the said Charles F. Palmer, is out of proportion to the value of such relinquishment, and cannot be sustained in equity against the claims of complainant herein asserted.

"15. Your complainant alleges, moreover, that the said Charles F. Palmer is the owner of a tract of land in Washington county, Va., known as the 'Conevey Land' lying on the public road leading from Midway to Emory & Henry College, in Saltville magisterial district, in the vicinity of Meadow View.

"16. Complainant alleges that the conveyance of Charles F. Palmer and wife to the Palmer Land & Cattle Company, set forth in paragraph No. 7, was a transparent attempt to convert his realty into personalty, and amounted to no more than a conveyance to himself, made to facilitate a scheme of fraud upon his creditors.

"17. Complainant alleges that the property mentioned in the said deed to the Palmer Land & Cattle Company was retained in the possession of the said Palmer and has continued in his use, enjoyment and control without accountability to his creditors. The attempt to place this property, under the contingencies named in the deed of trust to Bell, trustee, at the disposal of the trustee, or some of his creditors, cannot be sustained in a court of equity, and the said deed of trust is illegal upon its face and void. An actual change of the possession of the property, and especially the personal property, named in said deed of assignment, was essential, and without this the said deed is fraudulent per se, and void as to existing creditors. The said personal property was valuable, worth many thousand dollars, and that a large amount of said personal property has been and is being converted by the said Charles F. Palmer to his own use. And in this connection complainant charges that the said trustee had notice of the intent with which the said trust was made. It is submitted that the said deed of trust to J. W. Bell, trustee, contravenes the powers of the grantor therein, under the law, as a corporation, to tie up for an unreasonable time, upon contingencies, and reserve to itself power over the property conveyed, incompatible with the avowed purpose of the deed and adequate to the defeat thereof. The said corporation, which is virtually and in effect Charles F. Palmer, by the terms of said deed is suffered to remain in the possession of the said property conveyed and the enjoyment thereof without accountability until default is made in the payment of the debts secured, and request of the creditors to foreclose; in this case the creditor being Charles F. Palmer himself, who was the sole owner of the stock and bonds, and without accountability to the trustee either arising from a sale thereof or the renting thereof, or otherwise. The law does not authorize such an agreement. It is fraudulent per se; and the owners of the bonds secured under such an agreement, even though bona fide, which they are not, and cannot be, are not protected over other creditors of the grantor, legal or equitable. It is palpable and manifest from the face of this deed of trust, and the deed of Charles F. Palmer and wife made contemporaneously therewith, and recorded on the same hour of the same day, therewith, that they contained illegal provisions for the benefit of the said Charles F. Palmer, and were so intended; and that the same are prejudicial to other creditors of the said Palmer; and this was sufficient notice to persons dealing with such stock and bonds of the illegal and fraudulent character thereof. The said Charles F. Palmer by this manipulation has sought to shield his property from his other creditors, and those claiming benefits thereunder, and he cannot in equity, or under the statute of Virginia, be permitted to enjoy benefits at the expense of other creditors of the debtor, who are thereby hindered and delayed in the collection of their debts, by this palpable subterfuge.

"18. Complainant alleges that the said George W. Palmer died possessed of considerable property which is liable to the claims of the creditors of his estate, of whom your complainant is one. Among other things he owned certain certificates on the Bank of Abingdon, Va., a defunct corporation of which D. A. Preston is the receiver under a decree of the Circuit Court of Wythe county, Va. The said Charles F. Palmer qualified as administrator of the estate of George W. Palmer, and gave bond as such upon which H. L. Morgan entered as security. Complainant alleges that said certificates of deposit are worth several thousand dollars; that the said Charles F. Palmer committed

a devastavit of the said estate by making use of the said certificates for his private benefit, by converting the same to his own use in the payment of an individual debt to the First National Bank of Abingdon, Va., to which he transferred said certificate as collateral security, and which said bank in turn sold the said certificate to one J. I. Hurt. The said certificates were bought and paid for by George W. Palmer in his lifetime, and were indorsed and transferred in blank, and were never transferred on the books of said bank, nor was the receiver notified of the said transfer—hence one dealing with said certificates was put upon inquiry and notice of the ownership thereof. Your complainant charges that the said First National Bank of Abingdon, Va., knew, or had the means of knowing, that the said devastavit was being committed, and the said J. I. Hurt also had notice thereof that the said certificates belonged to the estate of George W. Palmer; that the said certificates have not yet been paid by D. A. Preston, the trustee of the Bank of Abingdon. The said devastavit having been committed, the security upon the bond of the administrator is responsible to the extent of his suretyship on said bond.

"19. Complainant alleges that the act of incorporating the said named companies or either of them was done with the view to defraud, and the conveyances to them were made in order to so dispose of the stock and bonds thereof, and thereby to facilitate the end of hindering and delaying the creditors of Charles F. Palmer or any of them in the collection of their debts, and not for the legitimate ends of the business of such corporations, and was an act of fraud upon the rights of such creditors which will not be permitted to cloak and shield the property from the claims of his creditors; and that all who have dealt with or claim to be purchasers of such stock or the bonds of the said incorporated companies had notice of the fraud, alleged in this bill, and that any such dealings tended to delay, hinder, and defraud the other creditors of Charles F. Palmer in the collection of their debts against him; that, moreover, the transfer of the stock and bonds of the said named incorporated companies, in so far as they were made, were only for the security of antecedent and pre-existing debts, and not for any new advance or credit, and that hence the takers and holders thereof cannot be considered as bona fide purchasers thereof; that the said named antecedent creditors not having surrendered or canceled their pre-existing debt upon receiving such additional collateral securities are not entitled to be considered in a court of equity as bona fide purchasers thereof, and complainant alleges that in no case was the antecedent debt or the pre-existing security surrendered. The said transferees have parted with no value, surrendered no existing right, nor placed themselves in any worse legal position as to their debts than before, in consideration of the transfer complained of.

"Being without adequate remedy at law, and only relievable in a court of equity, and in order to prevent a multiplicity of suits, and to the end that the rights of the parties hereto may be asserted and determined, your complainant prays that Charles F. Palmer in his own right; and Charles F. Palmer, administrator of the estate of George W. Palmer, deceased; and the Palmer Land & Cattle Company, incorporated; and the Palmer-Thomas Lumber Company, incorporated; and the L. A. Palmer Company, incorporated; the Holston Mercantile Company, incorporated; the Holston Salt & Plaster Company, incorporated—which said companies are corporations created by the laws of the state of Virginia, and existing and doing business in the Western District of Virginia; and Charles F. Palmer and Leon A. Palmer, late partners under the firm name and style of L. A. Palmer & Co.; James W. Bell, trustee, under a deed of trust executed to him by the Palmer Land & Cattle Company; Mrs. Susan M. Palmer, wife of Charles F. Palmer; Walter S. Preston, executor of A. C. Cummings, deceased; the Lynchburg National Bank; the Bank of Chilhowie, Va.; First National Bank of Lynchburg, Va.; the Chatham National Bank of New York City; Marion National Bank, Marion, Va.; the Bank of Marion, Marion, Va.; the American National Bank of Orange, Va.; the Citizens' Bank of Lebanon, Va.; Radford Trust Company of Radford, Va.; Drovers' & Mechanics' National Bank of Baltimore, Md.; the American Bank of Orange, Va.; the Saltville Bank of Saltville, Va., a corporation created by and existing under the laws of the state of Virginia; the Bank of Wytheville, of Wytheville, Va., a corporation created by and existing under the laws of

the state of Virginia; the Bank of Glade Spring, of Glade Spring, Va., a corporation created by and existing under the laws of the state of Virginia; the People's National Bank of Lynchburg, Va.; the First National Bank of Abingdon, Va.; V. H. Thomas; and W. F. Smyth and H. L. Morgan; S. F. Akers, trustee, in a deed of trust executed to him as trustee by the Holston Mercantile Company; and Wyndham B. Robertson and George E. Worden, directors in the Holston Mercantile Company—be by due and proper process of subpœna made parties defendant to this bill, and that they answer the same, but an answer under oath is expressly waived.

"(1) That a receiver be appointed to take charge of the assets, lands, stock, farming implements, tools, machinery, appliances, goods, wares, merchandise, choses in action, notes, bonds, and evidences of debt, books, papers, contracts, appurtenances, and appointments of the said named incorporated companies, viz., the Palmer Land & Cattle Company, incorporated; the Palmer-Thomas. Lumber Company, incorporated; the L. A. Palmer Company, incorporated; the Holston Mercantile Company, incorporated; and the Holston Salt & Plaster Company—to utilize and preserve and care for and account for the same under the future orders of this court, so that the same may be subject to the decrees and orders that may be made in regard thereto upon the future consideration of the rights of the parties or any other creditors of Charles F. Palmer, claiming an interest therein.  (2) That a writ of injunction may issue inhibiting and enjoining any disposal by sale or otherwise of any of the property held by the said incorporated companies, except by and under the order of this court, through and under its appointees and receivers, and until the further order of this court.  (3) That the agents, servants, and employés of the said named incorporated companies, their respective directors, officers, and managers, and said respective companies be required to turn over, in full possession and control, to said receiver, the properties conveyed.  (4) That the conveyances of Charles F. Palmer and Susan M. Palmer, his wife, to the Palmer Land & Cattle Company, of date March 1, 1904, and the conveyance of the Palmer Land & Cattle Company to James W. Bell, trustee, of date March 1, 1904, and the conveyances of Charles F. Palmer and B. H. Thomas to the Palmer-Thomas Lumber Company of date March 1, 1904, and the conveyance of the Holston Mercantile Company to S. F. Akers, trustee, of date September 18, 1905, and the deed of J. W. Bell and wife to Susan M. Palmer of date ——— day of ———, 19—, be declared fraudulent and void as to the claims herein asserted by the complainant as being intended to hinder, delay, and defraud complainant as a creditor of Charles F. Palmer in the collection of his debts as evidenced by the judgments named in this bill.  (5) That the assets and property of the said L. A. Palmer Company consisting of all its machinery, stock, goods, wares, and merchandise, choses in action, creditors, and holdings, be declared subject to the debts of the said complainant against the partnership of L. A. Palmer & Co. and Charles F. Palmer, and the estate of George W. Palmer, of which the said Charles F. Palmer is the personal representative, and that the same and the proceeds thereof be applied by the receiver to the payment of your complainant's said debt, as the property of L. A. Palmer & Co. and of Charles F. Palmer, and that the property, assets, and effects of the Holston Mercantile Company in the hands of S. F. Akers, trustee, and the property of the Holston Salt & Plaster Company be taken in possession by the said receiver, and subjected to the debts against Charles F. Palmer herein asserted; that the land known as the 'Conevey Place' be sold.

"That all necessary and proper accounts be taken by a commissioner of this court, showing what assets, real and personal, of the estate of George W. Palmer, deceased, went into the hands of Charles F. Palmer as executor, and what thereof and to what extent the said estate, or the personal representative thereof, and his security upon his official bond as upon and for a devastavit of said estate, is liable for the debts of complainant herein asserted; that all necessary and proper accounts be ordered; that the receiver or receivers of the various and sundry properties may be authorized to take full charge of the same, and to dispose of the same and account therefor under the orders of this court; and that general relief be extended in the premises in view of the rights and equities of the complainant and of the other parties

to this bill; and that such general relief may be extended in the premises as to equity seems meet.

"And as in duty bound, your complainant will ever pray, etc.

"A. P. Fowler,

"Receiver of the American Exchange National Bank of Syracuse, New York.

"By His Solicitor.

"Daniel Trigg, Solicitor for Compt."

We have deemed it necessary to set out the complainant's bill at length, in order that the point before us might be fully understood. Filed with the bill and as exhibits thereto are certified copies of the several judgments set out in the bill, as are also copies of the deeds in trust, deeds of conveyance, etc., therein referred to, but we do not think it material to present them in this opinion. The defendant C. F. Palmer, and C. F. Palmer, as partner in L. A. Palmer & Co., answered at length. Some others of the defendants also filed answers and one or more of them filed special pleas. The defendants Walter S. Preston, the First National Bank of Abingdon, the Holston Mercantile Company et al., the Bank of Wytheville, the Drovers' & Mechanics' Bank of Baltimore, the People's National Bank of Lynchburg, and Charles F. Palmer, as administrator of Geo. W. Palmer, deceased, severally demurred to the bill, the ground upon which the demurrers were based being, chiefly, that complainant's bill was multifarious. On this ground the court, on June 8, 1906, dismissed the bill, having entered the following decree:

"This cause coming on to be heard at a former day of this term, and arguments of counsel having been heard, and, as the court is of the opinion that the complainant's bill is multifarious, it is adjudged, ordered, and decreed that said bill be and the same is hereby dismissed; but without prejudice to the right of complainant in a new suit or suits. It is further ordered that Walter S. Preston, executor; People's National Bank of Lynchburg; Holston Mercantile Company; W. B. Robertson; George E. Worden; S. F. Akers, trustee; Chas. F. Palmer, Adm'r; Bank of Wytheville; Drovers' & Mechanics' National Bank of Baltimore; and First National Bank of Abingdon—do recover of complainant their costs in this behalf expended, to be taxed by the clerk."

From this decree the complainant appealed to this court, and the question of multifariousness thus raised by the demurrers to the bill is alone for our consideration. The bill charges, substantially, that the complainant had judgments rendered and docketed in the Circuit Court of the United States for the Western District of Virginia, amounting in the aggregate to about $80,000 against the defendants, Charles F. Palmer et al., and that the said Palmer, in order to defeat the collection of these judgments, had transferred his property, real and personal, as set out in the bill, to certain partnerships, corporations, and companies, of which he was a member, and had caused the deeds in trust and the conveyances mentioned in the bill to be made by which his property was transferred and conveyed with the fraudulent purpose of defeating the collection of complainant's judgments. In other words, by the terms of his bill the complainant is seeking to pursue certain property which, in the outset, as is alleged, was that of the defendant Charles F. Palmer, and which, as is further alleged, is liable to the lien of complainant's judgments, or should be subjected to their satisfaction, the further allegation being that the property has

been fraudulently conveyed by Palmer, or the ostensible ownership thereof, through various fraudulent schemes and devices, changed with the purpose and intent of putting it beyond the reach of complainant in proceeding by execution on the said judgments. The bill sets out various and sundry corporations, partnerships, and companies which are alleged to have been mere creatures or contrivances of Palmer, through which to carry out his fraudulent and unlawful schemes, the purpose of which on the part of Palmer, as alleged, was to defeat the complainant in the collection of said judgments by thus conveying, covering up, and beclouding the title of his (Palmer's) property. The prayer of the bill is for the writ of subpœna to parties named therein, and the relief contemplated is for injunction restraining the further transfer or disposition of the property described as that of Palmer and for a receiver to take charge of the same; also, that the several deeds in trust, transfers, and conveyances alleged in the bill be declared void and set aside, and that the said property be subjected, or as much thereof as may be necessary for that purpose, to the payment of complainant's judgments, and for an account. As shown by the bill, the individuals who are named as trustees in the deeds in trust, the grantees in the deeds of conveyance, the individual members of the partnerships and the incorporated companies named, all of them, as alleged, being the instrumentalities and agencies adopted and used by Palmer in the inception, progress, and consummation of his fraudulent purpose to defeat the complainant in the collection of his judgments, are made defendants. There is also a class of parties defendant composed of banks, both national and state, alleged in the bill to have been unlawfully preferred in assignments made by Palmer or to be otherwise interested in the property involved.

Is this bill bad for multifariousness? We think not, and we are of the opinion that there was error in sustaining the demurrer and dismissing complainant's bill on that ground. If we understand the bill aright it seeks but a single object and that is to reach through a court of equity property which it is alleged should be subjected to the satisfaction of certain judgments for money recovered in a court of law, on the ground that the property has, by its owner, a defendant in the said judgments, been fraudulently conveyed, disposed of and perverted with the intent to deprive the complainant of his right and that the said defendant, with this end in view, has so devised and carried out his schemes of fraud through the transfers, conveyances, and dispositions of the property, as alleged, as to place it beyond the reach of legal process. The property which the complainant is pursuing was owned and possessed by the defendant Charles F. Palmer, as is alleged, and was liable for the payment of the judgments, but that the said property, in the progress of Palmer's fraudulent scheme, and in order to carry it out, has passed through or is now lodged in one or more of the defendants, each claiming some interest therein, or having some alleged right or title thereto, to be affected if complainant's bill be true. Under such conditions the bill is not multifarious, because there is not that distinct or separate cause of action contemplated by this term. It may be that in such a great number of parties it will be

disclosed in the course of the proceeding that some of them are without interest, or that there is a misjoinder of parties, but this would not constitute a multifarious bill to be dismissed on demurrer, but would create a situation for discontinuance or dismissal only as to such parties as are improperly brought in, and as to the subject-matter, should the action become so complicated and confused as to embarrass the court in its investigation, the remedy furnished is that the court may ex mero motu refuse to pass upon matter not germane to the principal subject of the action.

Starting with Palmer, who had the fraudulent design of so disposing of and covering up his property as to deprive the complainant of his legal remedy to have it subjected to the payment of his judgments, the bill sets out a connected story, detailing the various schemes, artifices, and plans resorted to by him in order to accomplish his purpose. With this beginning, based upon the fraudulent intent of Palmer and the purpose he had in view, the object of complainant's bill is to reach the property wherever or with whomsoever it may be found. It it said in Gaines v. Chew, 2 How. (U. S.) 619, 11 L. Ed. 402, that "what shall constitute multifariousness is a matter about which there is a great diversity of opinion." We concede this to be true, and we readily recognize the fact that in many instances it is difficult to draw a distinction between a bill which is bad for multifariousness and one that is not. However, we think that the line is sufficiently clearly drawn to establish the principle that where the object of the suit is single and it happens that different persons have separate interests in distinct questions which arise out of the single object, it necessarily follows that such different persons must be brought before the court in order that the suit may conclude the whole subject, and in order to determine whether a suit is multifarious or in other words contains distinct matters, the inquiry is not whether each defendant is connected with every branch of the cause, but whether the plaintiff's bill seeks relief in respect of matters which are in their nature separate and distinct. Salvidge v. Hyde, 5 Mad. Ch. 138.

In Gaines v. Chew, from which we quote above, a bill was filed against the executors of an estate and all those who purchased from them, and the court held that the demurrer for multifariousness should be overruled, and in delivering the opinion the court said:

"The complainants have made defendants the executors named in the will of 1811, and all who have come to the possession of property, real and personal, by purchase or otherwise, which belonged to Daniel Clark at the time of his death."

And whilst the court in that case used the language we have quoted, yet in further commenting upon the doctrine it said:

"In general terms a bill is said to be multifarious which seeks to enforce against different individuals demands which are wholly disconnected. In illustration of this it is said if an estate be sold in lots to different persons, the purchasers could not join in exhibiting one bill against the vendor for a specific performance."

This last declaration is founded in reason, because although it was one parcel of land in the outset, yet when it was divided and sold to

several different purchasers, there was no such community of interest or connected right as to authorize all of them to be joined as complainants in the same action. Each purchaser's right was entirely separate and distinct from that of the others.

In delivering the opinion of the Supreme Court of North Carolina in Bedsole v. Monroe, 40 N. C. 313, Chief Justice Ruffin said:

"If the grounds of the bill be not entirely distinct and not whole; if they arise out of one and the same transaction or series of transactions, forming one course of dealing and all tending to one end; if one connected story can be told of the whole; then the objection (multifariousness) cannot apply."

In our opinion the principle thus laid down is maintainable not only on the ground that the basis of complainant's bill is one series of transactions connected and carried out for the purpose of accomplishing a particular end, but it is enforced on the well-established principle of avoiding a multiplicity of suits, so as not to take, as is so often said, "two bites at a cherry," but dispose of the whole subject of controversy and its incidents and corollaries in one action. Following in the same line, it is well said in the case of Fisher v. Trust Company, reported in 138 N. C. 227, 50 S. E. 660, that "if the fountain is tainted, so likewise is the water that flows from it into all the streams." The decision in the Bedsole Case is in entire harmony with Mr. Story in his treatise on Equity Pleading, § 271, wherein he says:

"The rule is that if the grounds of the complainant's bill be not entirely distinct and . unconnected; if they arise out of one and the same transaction, forming one course of dealing and all tending to one end; if one connected story can be told of the whole—the objection of multifariousness cannot be sustained."

See, also, Oliver et al. v. Piatt, 3 How. (U. S.) 333, 11 L. Ed. 622. In a leading North Carolina case (Parish v. Sloan, 38 N. C. 610), the principle we are considering is discussed in a most forceful and, to our minds, conclusive manner. There the plaintiff filed a bill alleging that Dixon Sloan, one of the defendants, was indebted, and executions were issued against him, and certain negroes were sold, some of them being bought by the defendant Faison, and the remainder by Daniel C. Moore, and on the same day Dixon Sloan sold other slaves to Faison upon the agreement that the latter should convey the negroes purchased at the sheriff's sale to David D. Sloan, in trust for the wife of Dixon Sloan, during her life, and after her death to her children, the other defendants. It was alleged that this transfer was made in fraud of creditors, etc. It was further alleged that John C. Moore was security for Dixon, and held a mortgage from Sloan on several negroes to secure him, and that later Dixon Sloan mortgaged to John C. Moore other negroes to secure another creditor. It is then alleged that all the debts secured by the mortgage were paid by the sale of some of the negroes conveyed to John C. Moore. The bill prayed that the debts due the complainant be paid out of the negroes mortgaged to John C. Moore, and if they were not sufficient, then out of the negroes conveyed to David D. Sloan in trust for Mrs. Dixon Sloan and her children. There was a demurrer filed to this bill upon the ground that it was multifarious, in that the slaves sold by Faison, sheriff, were in

no way connected with the mortgage of the slaves to Moore. In overruling the demurrer, the Supreme Court of North Carolina said:

"But when one general right is claimed by the complainant, though the individuals made defendants have separate and distinct rights, yet they may all be charged in the same bill, and a demurrer for that cause cannot be sustained."

The same doctrine is laid down by Chancellor Walworth in the case of Boyd v. Hoyt, 5 Paige (N. Y.) 65, and in the case of Whaley v. Dawson, 2 Sch. & Lef. 370, it was held that, in English cases, demurrers, because the complainant demanded in his bill matters of distinct nature against several defendants not connected in interest, have been overruled where there has been a general right in the complainant covering the whole case, although the rights of the defendants may have been distinct; and so it was held in the case of Dimmock v. Vixby, 20 Pick. (Mass.) 368, that where one general right is claimed by the complainant, although the defendants may have separate and distinct rights, the bill of complaint is not multifarious. The essential unity of the proceeding in the case before us consists in the fact that the property of C. F. Palmer, the debtor, is alone sought to be appropriated to his own debt, and the gist of the bill is that the various parties named as defendants are the mere conduits used by the defendant Palmer to fraudulently put his property beyond the reach of his creditor.

We do not think the bill should have been dismissed for multifariousness, and the decree sustaining the demurrers on this ground is, in our opinion, error. The said decree of the Circuit Court of the United States for the Western District of Virginia is therefore reversed, and the cause remanded.

Reversed.